<u>**Baltimore EXILE – A Comprehensive Strategy to Reduce Gun Violence**</u>

**I. Overview**

  **Baltimore EXILE** is a unified and comprehensive strategy to combat gun crime that combines law enforcement efforts, community action and revitalization, and public awareness. The success of this strategy depends on a partnership – a true team effort – among our local, state, and federal law enforcement agencies, and on the dedication and determination of community activists, educators, and civic and faith-based organizations.

  The fundamental principle of Baltimore EXILE is that ***any felon who carries a gun in Baltimore is going to jail*** because honest and law-abiding citizens want safe neighborhoods for themselves and their children.  The ultimate message we need to communicate is that criminals will do ***hard time for gun crime***.  We must empower law-abiding citizens who want to rid their neighborhoods of criminals who spread violence and despair.

  Baltimore EXILE is a joint effort by the State's Attorney's Office for Baltimore City (SAO), the Baltimore Police Department (BPD), the Division of Parole and Probation of the Maryland Department of Public Safety and Correctional Services (Maryland Parole/Probation), the Governor's Office of Crime Control and Prevention (GOCCP), the United States Attorney's Office for the District of Maryland (USAO), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the High Intensity Drug-Trafficking Area Task Force (HIDTA), the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), United States Immigration and Customs Enforcement (ICE), and the United States Marshals Service (USMS). The success of the program will depend on continued cooperation and coordination among this team of local, state, and federal agencies.

  Drawing on the principles of the nationwide Project Safe Neighborhoods program, www.psn.gov, Baltimore EXILE involves strong partnerships, effective strategic planning, regular training, community outreach, and accountability.  The EXILE partners will pursue traditional law enforcement strategies along with creative, innovative approaches that are tailored to the challenges of reducing gun crime in Baltimore.

**II. Law Enforcement Strategy**

  The components of the Baltimore EXILE law enforcement strategy are designed to focus law enforcement resources on the most violent individuals and most violent geographic areas in Baltimore and to achieve the goal of arresting and detaining violent offenders as quickly as possible while also ensuring that violent organizations and groups are permanently dismantled.

## A. Firearms Cases

Prosecutors in the SAO and officers of the BPD are on the front lines in the fight against violent crime.  The vast majority of the firearms cases in Baltimore City will continue to be prosecuted by the SAO.  Consequently, one of the principal roles of the USAO is to use its resources, and the prospect of federal prosecution, to support the mission of our local prosecutors and police by prosecuting as many high-quality, high-impact firearms cases as possible.

Under Baltimore EXILE, the USAO will consider cases for federal prosecution where –

1)      the evidence supports a successful prosecution; and

2)      the case meets one of the following criteria:

   a)      the defendant used or possessed a firearm in furtherance of a drug crime or violent crime; or

   b)      the defendant has two or more prior felony convictions[1] for either a crime of violence or a drug-trafficking offense, which typically results in a higher penalty in federal court than in state court; or

   c)      the defendant has one prior felony conviction for either a crime of violence or a drug-trafficking offense, where either the potential penalty in federal court is higher than in state court or the case is selected for federal prosecution because of special circumstances; or

   d)      the defendant has at least one prior felony conviction, which typically results in a higher penalty in state court than in federal court, and the case is selected for federal prosecution because of special circumstances.

---

[1] For purposes of Baltimore EXILE, "prior felony conviction" includes a prior adult federal or state conviction for an offense punishable by imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.

Special circumstances include, but are not limited to, the following:

(1)    the defendant's criminal history or other law enforcement information indicates a history of violence or substantial narcotics-trafficking activity;

(2)    the defendant is a member of a significant criminal organization;

(3)    the defendant has been identified by the BPD as a priority target; or

(4)    the defendant has a prior federal firearms-related conviction.

When reviewing cases for possible federal prosecution, the USAO will give special consideration to cases involving defendants identified by the BPD as priority, "most violent" targets. In addition, the USAO will give special consideration to cases arising from arrests made in areas of the city identified by the BPD as the most violent based on recent trends in violent crime and gun crime. By giving priority to cases involving the "most violent" targets and cases from the most violent areas, the USAO hopes to ensure that it prosecutes firearms cases against the city's worst offenders and that it is responsive to trends in violent crime.

## 1. Felon-in-Possession Cases

### a.    Defendants With Two or More Prior Felony Convictions for Crimes of Violence or Drug-Trafficking Offenses

The SAO will continue to take the position that a defendant with two or more prior felony convictions for crimes of violence or serious narcotics offenses must plead guilty to the state felon-in-possession charge that carries a mandatory term of five years imprisonment.

The SAO will aggressively seek pretrial detention for all such defendants and will use every tool at its disposal to keep the defendant detained, including appealing bail decisions to the Circuit Court where appropriate.

If the defendant is on parole or probation at the time of his arrest, the SAO's Collateral Unit will take steps to initiate violation proceedings immediately, will seek detention, and will seek the imposition of the maximum possible suspended time, or "back-up" time, for that defendant. In all such cases, Maryland Parole/Probation will take immediate steps to initiate violation proceedings and to secure arrest/retake warrants for those violators, without waiting for the disposition of any new charges.

For each case involving such a defendant that has been accepted by the USAO for federal prosecution, the assigned AUSA will make a determination about whether the case is ready to be indicted prior to the date of the arraignment on the pending state charge or within 90 days of the date of arrest, whichever is later.

In appropriate cases, once the assigned AUSA has made the determination that the case is ready to be indicted and unless law enforcement interests dictate otherwise, the AUSA will send a letter to the Chief of the Firearms Investigation Violence Enforcement (FIVE) Unit advising that the case will proceed federally if a satisfactory disposition has not been reached by the date of the state arraignment or by another specified date.  The SAO will communicate the USAO's intentions to the defendant and his counsel.

If the state arraignment date is the date specified in the AUSA's letter, the ATF agent or HIDTA TFO assigned to the case will be in the courtroom on the date of the state arraignment.  If the defendant accepts the mandatory five-year state term, the federal case will be declined without ever having been indicted.  However, if the defendant does not accept the five-year plea and is not in state custody, the agent or TFO will take the defendant into federal custody and bring him immediately to federal court, where a criminal complaint will be filed by the assigned AUSA.  The case will then proceed to indictment federally.  If the defendant is in state custody, then papers will be filed to transfer the defendant to federal custody upon the filing of the federal indictment.

If a date other than the state arraignment date is specified in the AUSA's letter, and if the defendant has not accepted the five-year plea by that date, the defendant will be transferred to federal custody, and the case will proceed to indictment federally.

## b.     Defendants With One Prior Felony Conviction for a Crime of Violence or Drug-Trafficking Offense

The SAO will continue to take the position that a defendant with one prior felony conviction for a crime of violence or serious narcotics offense must plead guilty to the state felon-in-possession charge that carries a mandatory term of five years imprisonment.

The SAO will aggressively seek pretrial detention and will use every tool at its disposal to keep the defendant detained, including appealing bail decisions to the Circuit Court where appropriate.

If the defendant is on parole or probation at the time of his arrest, the SAO's Collateral Unit will take steps to initiate violation proceedings immediately, will seek detention, and will seek the imposition of the maximum possible "back-up" time for that defendant.  In all such cases, Maryland Parole/Probation will take immediate steps to initiate violation proceedings and to secure arrest/retake warrants for those violators, without waiting for the disposition of any new

charges.

For each case involving such a defendant that has been accepted by the USAO for federal prosecution, the assigned AUSA will make a determination about whether the case is ready to be indicted prior to the date of the arraignment on the pending state charge or within 90 days of the date of arrest, whichever is later.

In appropriate cases, once the assigned AUSA has made the determination that the case is ready to be indicted and unless law enforcement interests dictate otherwise, the AUSA will send a letter to the Chief of the FIVE Unit advising that the case will proceed federally if a satisfactory disposition has not been reached by the date of the state arraignment or by another specified date. The SAO will communicate the USAO's intentions to the defendant and his counsel.

If the state arraignment date is the date specified in the AUSA's letter, the ATF agent or HIDTA TFO assigned to the case will be in the courtroom on the date of the state arraignment. If the defendant accepts the mandatory five-year state term, the federal case will be declined without ever having been indicted. However, if the defendant does not accept the five-year plea and is not in state custody, the agent or TFO will take the defendant into federal custody and bring him immediately to federal court, where a criminal complaint will be filed by the assigned AUSA. The case will then proceed to indictment federally. If the defendant is in state custody, then papers will be filed to transfer the defendant to federal custody upon the filing of the federal indictment.

If a date other than the state arraignment date is specified in the AUSA's letter, and if the defendant has not accepted the five-year plea by that date, the defendant will be transferred to federal custody, and the case will proceed to indictment federally.

### c.     Defendants With Two or More Prior Convictions for Other Offenses

The SAO will take the position that as part of any plea, a defendant with two or more prior convictions for "non-qualifying" offenses – i.e., misdemeanors or felonies that do not trigger the application of the statutory five-year mandatory term of imprisonment – must agree to a term of imprisonment of three years, no part of which shall be suspended.

If the defendant is on parole or probation at the time of his arrest, the SAO's Collateral Unit will take steps to initiate violation proceedings immediately and will seek the imposition of the maximum possible "back-up" time for that defendant. In all such cases, Maryland Parole/Probation will take immediate steps to initiate violation proceedings and to secure arrest/retake warrants for those violators, without waiting for the disposition of any new charges.

For each case involving such a defendant that has been accepted by the USAO for federal prosecution, the assigned AUSA will make a determination about whether the case is ready to be

indicted prior to the date of the arraignment on the pending state charge or within 90 days of the date of arrest, whichever is later.

In appropriate cases, once the assigned AUSA has made the determination that the case is ready to be indicted and unless law enforcement interests dictate otherwise, the AUSA will send a letter to the Chief of the FIVE Unit advising that the case will proceed federally if a satisfactory disposition has not been reached by the date of the state arraignment or by another specified date. The SAO will communicate the USAO's intentions to the defendant and his counsel.

If the state arraignment date is the date specified in the AUSA's letter, the ATF agent or HIDTA TFO assigned to the case will be in the courtroom on the date of the state arraignment. If the defendant accepts the three-year term of imprisonment, the federal case will be declined without ever having been indicted. However, if the defendant does not accept the three-year plea and is not in state custody, the agent or TFO will take the defendant into federal custody and bring him immediately to federal court, where a criminal complaint will be filed by the assigned AUSA. The case will then proceed to indictment federally. If the defendant is in state custody, then papers will be filed to transfer the defendant to federal custody upon the filing of the federal indictment.

If a date other than the state arraignment date is specified in the AUSA's letter, and if the defendant has not accepted the three-year plea by that date, the defendant will be transferred to federal custody, and the case will proceed to indictment federally.

### d.    Defendants With One Prior Conviction for Other Offenses

The SAO will take the position that as part of any plea, a defendant with one prior conviction for a "non-qualifying" offense – i.e., a misdemeanor or felony that does not trigger the application of the statutory five-year mandatory term of imprisonment – must agree to a term of imprisonment of 18 months, no part of which shall be suspended.

If the defendant is on parole or probation at the time of his arrest, the SAO's Collateral Unit will take steps to initiate violation proceedings immediately and will seek the imposition of the maximum possible "back-up" time for that defendant. In all such cases, Maryland Parole/Probation will take immediate steps to initiate violation proceedings and to secure arrest/retake warrants for those violators, without waiting for the disposition of any new charges.

For each case involving such a defendant that has been accepted by the USAO for federal prosecution, the assigned AUSA will make a determination about whether the case is ready to be indicted prior to the date of the arraignment on the pending state charge or within 90 days of the date of arrest, whichever is later.

In appropriate cases, once the assigned AUSA has made the determination that the case is ready to be indicted and unless law enforcement interests dictate otherwise, the AUSA will send

a letter to the Chief of the FIVE Unit advising that the case will proceed federally if a satisfactory disposition has not been reached by the date of the state arraignment or by another specified date. The SAO will communicate the USAO's intentions to the defendant and his counsel.

If the state arraignment date is the date specified in the AUSA's letter, the ATF agent or HIDTA TFO assigned to the case will be in the courtroom on the date of the state arraignment. If the defendant accepts the 18-month term of imprisonment, the federal case will be declined without ever having been indicted. However, if the defendant does not accept the 18-month plea and is not in state custody, the agent or TFO will take the defendant into federal custody and bring him immediately to federal court, where a criminal complaint will be filed by the assigned AUSA. The case will then proceed to indictment federally. If the defendant is in state custody, then papers will be filed to transfer the defendant to federal custody upon the filing of the federal indictment.

If a date other than the state arraignment date is specified in the AUSA's letter, and if the defendant has not accepted the 18-month plea by that date, the defendant will be transferred to federal custody, and the case will proceed to indictment federally.

### 2. Additional Resources

The USAO will seek to designate qualified attorneys from the Department of Justice, the SAO, and other appropriate agencies as Special Assistant United States Attorneys to prosecute firearms cases. The USAO and SAO will continue to use cross-designated prosecutors to work together on violent-crime cases.

### 3. Communication with Bench

Through the Criminal Justice Coordinating Council and other appropriate venues, the SAO and the USAO will communicate with judges about the goals and initiatives of Baltimore EXILE, including the emphasis on pretrial detention of felons with guns and the need for "back-up" time to be imposed on felons who possess firearms while on parole or probation.

### 4. Preserving Prior State Convictions

The SAO will oppose unwarranted after-the-fact attempts by defense counsel to get state judges to refashion prior state convictions and sentences, whether under the "90-day rule," *coram nobis,* or any other means. If the USAO learns of any such attempts, it will oppose any unwarranted continuance of the federal case. The USAO will promptly notify the SAO of its interest in the state case and will offer whatever assistance is appropriate.

**B. Gangs**

Dismantling entire violent gangs and organizations – including by making use of the federal racketeering and conspiracy statutes – is one of the primary missions of Baltimore EXILE. We are committed to continuing to address the problem of violent gangs and street "crews" whose trade is guns, drugs, and violence. The Baltimore EXILE partners will continue to work together to pursue entire organizations and to prosecute high-impact cases involving violence by gang members. Our goal will be to identify and prosecute not only those gang members who actually commit the acts of violence, but also those who order that the acts of violence be committed, those who assist in the commission of the acts of violence, those who assist in covering up the acts of violence, and those who recruit new members to join the gangs.

**C. Proactive Identification of Violent Repeat Offenders**

Baltimore EXILE's team of local, state, and federal law enforcement agencies is committed to working proactively to identify the most violent offenders in Baltimore City and to devise strategies for getting them off the streets as quickly and effectively as possible. To accomplish this goal, we have begun implementing the Violent Repeat Offender (VRO) program.

Under this initiative, on approximately a monthly basis, the BPD provides the USAO and SAO with a list of some of the most violent individuals in the city – individuals who belong to violent gangs or organizations operating in Baltimore and individuals who have been charged with, or have been suspects in, shootings and murders. Some of these individuals have pending state gun, drug, or violent crime cases. Many are in violation of their parole or probation. Others have no pending charges but have lengthy and disturbing criminal histories. The BPD provides background materials regarding each VRO, including police reports, search warrants, and parole/probation information.

The USAO circulates information about these VROs to representatives of the SAO, Maryland Parole/Probation, ATF, HIDTA, DEA, FBI, and ICE. Maryland Parole/Probation determines the parole/probation status of these individuals, and the federal agencies determine whether those individuals are associated with any pending investigations.

An active list of VROs is maintained at any given time, and newly identified VROs are monitored pending the resolution of some of the active VROs. Representatives of the USAO, SAO, BPD, Maryland Parole/Probation, ATF, HIDTA, DEA, FBI, and ICE meet regularly to review the status of each of the existing VROs and to determine the most effective strategy for arresting and detaining the newly identified VROs.

For VROs who are in violation of their parole or probation, we first pursue those violations, which are typically the quickest way to get those individuals off the streets. If the VRO has a new arrest but has not been violated, Maryland Parole/Probation seeks a warrant and a violation proceeding is initiated immediately. A prosecutor from the SAO handles the

violation proceedings and attempts to ensure that each VRO receives the maximum possible amount of "back-up" time for the violation.

For VROs with pending state firearms cases, prosecutors from the USAO determine whether the case is appropriate for federal prosecution. If the case is accepted federally, the USAO immediately assigns the case to a federal prosecutor. If the case remains in state court, the SAO ensures that the case is handled with the highest priority based on the defendant's status as a VRO.

Each VRO without a viable pending case or who is believed to be part of a larger violent gang or organization is accepted for investigation by one of the participating federal agencies and is immediately assigned to a federal prosecutor. These investigations focus not just on the identified VRO, but on taking down the entire gang or organization of which he is a leader or member.

All VROs are placed on the watch list maintained by the SAO's War Room unit. If one of these individuals is arrested for any offense, the War Room notifies designated ASAs, BPD officials, and Maryland Parole/Probation officers. Those notifications by the War Room will help ensure that the case arising from the new arrest is handled with high priority and that Maryland Parole/Probation takes all necessary steps to initiate parole or probation violation proceedings where appropriate. In addition, all VROs who are on parole or probation are placed on Maryland Parole/Probation's "enhanced supervision" docket, which ensures that they are monitored closely by their parole or probation officers.

If newly identified VROs who are not yet on the active list are arrested and/or otherwise violate parole or probation while awaiting placement on the active list, those new pending cases and/or violations will be pursued immediately. Otherwise, those newly identified VROs will continue to be monitored until investigations of some of the active VROs have been completed.

**D. Violent Crime Impact Team**

Under the leadership of ATF, the Violent Crime Impact Team (VCIT), a squad of ATF agents and BPD task force officers, has been engaging in a concentrated law enforcement effort in some of the city's most violent neighborhoods. The VCIT uses the city's crime statistics to identify these neighborhoods and conducts proactive law enforcement operations to target violent individuals and organizations in these areas. To date, the VCIT's efforts have resulted in significant reductions in violent crime in the affected neighborhoods. The VCIT's ongoing review of the city's crime statistics will continue to guide its enforcement efforts and gauge its impact.

### E. Illegal Trafficking of Firearms

We are committed to addressing the problem of illegal firearms possession by going after not just the felons who possess guns, but also those who supply them or help make them available. We cannot effectively combat gun violence by waiting until guns fall into the hands of felons; rather, we must take steps to make it much more difficult for felons to get their hands on guns in the first place. The ATF's Crime Gun Analysis Branch, which collects data from law enforcement agencies and assists in identifying illegal firearms traffickers who supply guns to criminals, is a critical part of this effort.

Under Baltimore EXILE, firearms dealers who break the law will pay the price. In addition, friends, girlfriends, family members, or any other individuals who act as straw purchasers will face the same consequences as the felons they are helping – arrest, prosecution, and jail.

### F. Protection of Witnesses

The streets of Baltimore must be safe for honest, law-abiding citizens. Accordingly, any efforts to threaten or intimidate witnesses will not be tolerated. Baltimore EXILE's team of federal, state, and local agencies is committed to protecting witnesses and prosecuting those who would attempt to harm them. We will use the full force of the federal and state criminal laws to pursue vigorously anyone who threatens, intimidates, or retaliates against any witness, and take them off the streets for as long as possible.

### G. Training/Other Support for Police

#### 1. Training Programs

The SAO and USAO currently provide training to police officers in Baltimore City. As part of Baltimore EXILE, that training program will be expanded. Federal and local prosecutors and ATF agents will provide training to all BPD supervisors and officers as part of the BPD's weekly inservice training throughout the year. These training programs will focus on legal and investigative issues that arise in firearms cases, with the goal of improving the quality of all such cases and increasing the likelihood of successful prosecutions of such cases, whether in state or federal court.

The BPD will hold training sessions for all police officers and supervisors. The BPD will require its officers to take the standard investigative steps covered in these training programs after making firearms-related arrests, such as sending the firearm, magazine, and ammunition for fingerprints; taking statements from other occupants of a vehicle or residence where a firearm is recovered; and taking statements from, and fully identifying, all other witnesses present when a firearm is recovered.

### 2. EXILE Cards

Baltimore EXILE advice cards will be provided to local law enforcement officers containing investigative reminders for handling gun-related arrests, including providing *Miranda* warnings, identifying and interviewing all witnesses, fingerprinting guns and related evidence, and preparing timely reports regarding investigative events. The cards will also contain contact information so those officers can quickly get investigative assistance from a federal agent or task force officer.

### 3. Communication About Status of Cases

Communication among the partner agencies is critical to the success of Baltimore EXILE, but communication with the police officers who are on the front lines investigating EXILE cases is also essential. We are committed to improving communication with local police officers about the status of Baltimore EXILE cases, including legal and other issues that arise and the progress and disposition of these cases.

### H. Sharing Information About Acts of Violence

One of the goals of Baltimore EXILE is not just to arrest violent offenders, but to ensure that they are prosecuted successfully. In order to ensure that information about acts of violence reaches the investigators and prosecutors who need it, the Baltimore EXILE partner agencies have developed a system for sharing information about violent crime more effectively. This system is designed to ensure that information about shootings and murders is consistently passed among federal, state, and local authorities and that both state and federal prosecutors learn about, and are able to utilize, potentially vital witnesses in prosecuting acts of violence. This system will supplement the resources our law enforcement partners currently use to share leads and other information about acts of violence, including the ATF's National Integrated Ballistic Information Network and other law enforcement databases.

### I. Recognition of Outstanding Performance

The success of Baltimore EXILE depends on the tireless effort and energy of countless police officers, agents, prosecutors, and other law enforcement personnel. We are committed to recognizing and honoring outstanding performance by these dedicated professionals in working to fulfill the mission and achieve the objectives of Baltimore EXILE.

## III. Outreach/Community Action

Taking back our neighborhoods and communities requires more than effective law enforcement. As a result, an important aspect of Baltimore EXILE is its emphasis on community action and neighborhood renewal projects.

We must make the residents of the communities we serve understand that armed criminals are not just a police problem; they are the community's problem as well. Only through concerted action by the community can we stem the rising tide of violent crime and make a lasting, long-term impact.

### A. "Weed and Seed" and Other Revitalization Projects

During the past 10 years, Baltimore City has received several million dollars through the Department of Justice's "weed and seed" program, which is designed to "weed" out crime in particular areas and "seed" those areas with social programs and services. All but one of the "weed and seed" sites in Baltimore City during the past 10 years has experienced a reduction in criminal activity and an overall improvement in the quality of life in the area. GOCCP also provides grants under the C-SAFE program to improve Baltimore neighborhoods.

Building on the success of the "weed and seed" model, as part of Baltimore EXILE we will initiate community revitalization projects in certain neighborhoods that have been hit hard by violent crime and that have been the focus of our law enforcement efforts to "weed" out violent felons. For instance, with the help of the Department of Justice and the Department of Housing and Urban Development, we have initiated a project in the vicinity of the Oswego Mall housing project to clean up the area and bring social service providers into the area to help residents. We will solicit the assistance of civic leaders and community organizations in Baltimore City to fund similar projects in other parts of the city.

### B. Expansion of Neighborhood Watch Programs/Neighborhood Outreach

We will work with the BPD to promote and expand the use of neighborhood watch programs and other types of activities designed to empower residents to take back control of their streets from drug dealers and other criminals.

In addition, prosecutors and officers will conduct periodic neighborhood meetings with community leaders, including leaders of faith-based organizations, and other residents. Those meetings will help send the message to our residents that local and federal law enforcement are united in our efforts to serve and protect them. Those meetings will also provide a forum for law enforcement to obtain information about criminal activity in the neighborhood from the people who know it best.

### C. Citizen Reports/Baltimore EXILE Tipline

As more fully described below, the media/public relations strategy for Baltimore EXILE will include a campaign to encourage citizens to report gun crime to police. An EXILE Tipline, (410) 685-GUNS, has been established to make it easier for residents to report information about guns and drugs to law enforcement anonymously. An e-mail EXILE Tipline will be established as well. Through media/public relations campaigns, residents will be encouraged to use the EXILE Tipline to provide information about individuals who are carrying guns and/or dealing drugs in the neighborhood, while continuing to use 911 to make urgent reports regarding ongoing criminal activity.

### D. "Call-Ins"/Outreach to At-Risk Individuals

Officers from the BPD and representatives of the federal agencies will work with officers from Maryland Parole/Probation and neighborhood activists to identify felons in the area who are on parole or probation for violent crimes or firearms offenses. Baltimore EXILE will hold periodic "call-ins" for these offenders, in order to communicate the message directly and unambiguously that they are going straight back to jail if they commit another offense. The USAO, SAO, BPD, and Maryland Parole/Probation will develop criteria for identifying the offenders who will be the subject of these "call-ins."

### E. Educating Students

In order to achieve lasting change, we must communicate the goals of Baltimore EXILE to our youth. Baltimore EXILE partner agencies will send representatives to high schools and middle schools to promote the goals of the program and to encourage students to help end the cycle of gun crime and violence in our community.

### IV. Public Awareness

A key component of Baltimore EXILE will be an aggressive media/public relations campaign to send a message to criminals and to the broader community that any felon who carries a gun in Baltimore is going to jail – that criminals will do *hard time for gun crime*. The campaign will be designed to alert offenders to the crackdown on gun crime and to energize the community to support law enforcement efforts and, in particular, their local police.

This EXILE campaign will include features of some media/public relations campaigns that are currently underway. For instance, public service announcements about gun violence currently air on a Baltimore City television station. However, the EXILE campaign will be broader and more comprehensive. The campaign may include, but not be limited to, the following:

- television ads;
- radio ads;
- print ads;
- billboards;
- ads on city/county buses; and
- flyers to be distributed in affected neighborhoods.

All of these ads will feature the Baltimore EXILE logo and will be designed to communicate clearly the slogans of Baltimore EXILE – *"Hard Time for Gun Crime"* and *"Gun Crime = Jail Time."*

In addition, tens of thousands of business cards bearing the Baltimore EXILE logo, the slogans *"Hard Time for Gun Crime"* or *"Gun Crime = Jail Time,"* and the telephone number and e-mail address of the EXILE Tipline will be produced and distributed on the streets of affected neighborhoods.

In order to be able to mount this type of broad-based, sustained, aggressive media/public relations campaign, we will seek the assistance and support of a coalition of business and community leaders in the affected areas, and we will ask broadcasters to provide in-kind contributions of services and airtime. State and local partners will explore the possible creation of a tax-exempt foundation to lead the media campaign efforts.

The Baltimore EXILE partner agencies will keep the news media informed about significant cases so that results will be reported on television and radio, in newspapers, and on the Internet. Such publicity will keep the public informed and spread the deterrent message of Baltimore EXILE.

## V. Tracking Results

The USAO and SAO will track the outcomes for all Baltimore EXILE defendants, including the following information:

1) how many were charged in state and federal court;
2) the nature of the charges;
3) whether the defendant was detained pretrial;
4) the dispositions of the cases; and
5) the sentences received (and, for state sentences, the portion of that sentence that was suspended).

Representatives of the participating agencies will meet on approximately a monthly basis to monitor the Baltimore EXILE initiatives, and the principals of those agencies will meet quarterly to review the progress of all aspects of the program.

**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.*
*Suite 7300, Bicentennial Building*
*Washington, DC  20530-0001*
(202) 252-6020    FAX: 252-6047    (www.usdoj.gov/usao)

December 3, 2014

Samuel Sterling

#34181-037
Gilmer FCI
P.O. Box 6000

Glenville, West Virginia   26351

      Re: Request Number: <u>FOIA-2015-00390</u>
      Date of Receipt: <u>November 4, 2014</u>
      Subject of Request: <u>Self/Specific Records ("Baltimore Exile") - USAO Maryland</u>

Dear Sterling:

      Your request for records under the Freedom of Information Act/Privacy Act has been processed.   This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Office.   To provide you with the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

      All of the records you seek are being made available to you.   We have processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you.   This letter is a full release.

      [  ]   **A** review of the material revealed:

      [  ]   Our office located records that originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.**   Once we have received the above payment, these records will be referred to the following component(s) listed for review and direct response to you:

_____

      [  ]   There are public records which may be obtained from the clerk of the court or this office, upon specific request.   If you wish to obtain a copy of these records, you must submit a new request.   These records will be provided to you subject to copying fees.

      [  ]   Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought.   Each file was given a separate Request Number (listed below), for which you will receive a separate response:

_____

[   ]   See additional information on next page.

This is the final action on this above-numbered request. If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, Washington, DC 20530-0001, or you may submit an appeal through this Office's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be received within sixty days from the date of this letter.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Susan B. Gerson
Assistant Director

Enclosure(s)

Form No. 0021A-nofee – 4/11

U.S. Department of Justice

*Executive Office for United States Attorneys*
*Freedom of Information Act & Privacy Act Staff*

| | |
|---|---|
| *Bicentennial Building* | *(202) 252-6020* |
| *600 E Street, NW, Suite 7300* | *(202) 252-6047 Fax* |
| *Washington, DC  20530* | |

District:              DMD

FOIA/PA Contact:   Celeste Hart

Request No.:        2015-00390

Requester:          Samuel Sterling

Subject:            Self/Specific Records ("Baltimore Exile") - USAO Maryland

Dear  Ms. Hart:

    Attached, for your information, is a copy of our final response to the above requester who sought records from your District.

    [ x ]   Please maintain the records in your District, for **120** days from the date of this letter as the requester may exercise his/her appeal rights.

    In the event the requester does appeal to the Office of Information and Policy (OIP), you will be notified.  In that event, you will be required to maintain the records in your district for an additional period of time.

    [  ]    The records may be returned to their permanent resting place.

    I appreciate your cooperation in the processing of this request.  If you have questions, please call the analyst listed below.

                                        Sincerely,

                                        Susan B. Gerson
                                        Assistant Director

FOIA/PA Unit Analyst:   Sonya Cruse

Attachment(s)

Form No. 030 - 6/12